STATE of Wisconsin, Plaintiff-Appellant,

v.

Glenn S. LALE, Defendant-Respondent.†

Court of Appeals

*No. 86–0495–CR. Argued April 23, 1987.—Decided September 16, 1987.*

(Also reported in 415 N.W.2d 847.)

† Petition to review filed. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

On behalf of the plaintiff-appellant there were briefs by *Bronson C. La Follette,* attorney general and *Michael R. Klos,* assistant attorney general. Oral argument by *Mr. Klos.*

On behalf of the defendant-respondent, there was a brief and oral argument by *Thomas G. Godfrey* of *Godfrey, Pfeil & Neshek, S.C.* of Elkhorn.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   At issue in this attempted first-degree murder case are three sixth amendment questions. First, where no complaint has been issued on a pending charge but the defendant has been arrested and admitted to bail after a hearing before the magistrate, does the sixth amendment right to counsel attach? Second, if not, then if the sixth amendment right to counsel did attach as to companion charges for which a complaint was issued, is that sixth

amendment right transferable to the charge for which there is no complaint? Third, if the prosecutor and the defendant's attorney agree that the government will not talk to the defendant without the attorney present, does the state's subsequent violation of the agreement mean that the confession must be suppressed? We conclude that the trial court erred in holding that defendant's confession must be suppressed as a violation of the sixth amendment right to counsel. We reverse.

## FACTS

The salient facts are that on early Sunday morning, September 15, 1985, a person was shot in the head at close range following an altercation at a tavern. Police obtained a description of the perpetrator's automobile and other information. Suspicion focused on Glenn S. Lale. Lale was soon arrested for attempted murder. A search warrant was obtained and officers went to Lale's house, looking for what was described by witnesses as a small, shiny or nickel chrome handgun. They seized the car that had been described to them and searched the house for the weapon. They recovered a .22 caliber Derringer concealed behind a circuit breaker box in the basement. They also seized a short-barreled shotgun and a machine gun which the trial court later found to have been seen in plain view.

The next day, a Monday, Lale appeared with counsel, Thomas Godfrey, before the trial court for a bail hearing because of his arrest for attempted murder. The assistant district attorney advised the trial court that the state had not completed its investigation, that search warrants were outstanding.

The assistant district attorney also said, however, that an attempted first-degree murder charge was forthcoming. Based upon this record, the court ordered a $10,000 recognizance bond and Lale was released. Following this hearing, Attorney Godfrey approached the assistant district attorney in the corridors of the courthouse. In the presence of detectives, Attorney Godfrey exacted the prosecutor's promise that the state would not talk to Lale.

Four days later, on Friday, September 20, a complaint was filed against Lale. It charged him with two felonies—possession of a sawed-off shotgun and possession of a machine gun. Attempted murder was not charged.

That same day, detectives persuaded Lale's girlfriend, Inez Kulick, to contact Lale and encourage him to talk to detectives regarding the shooting. They informed her that Lale was going to be charged with attempted first-degree murder the following Monday morning. They told her that they were the only ones who could help Lale now. They said that they knew Attorney Godfrey and made disparaging remarks about him. They said that Attorney Godfrey would only charge Lale an exorbitant amount of money to no avail. They promised to try and get the gun charges and attempted first-degree murder charges reduced. They told her that the victim was a troublemaker and a "drugger" and implied that because of this they had no desire to penalize Lale. They further stated that they would intercede on Lale's behalf with his employer because, apparently, if Lale was going to be charged on Monday with attempted first-degree murder, his employer would fire him.

Kulick reached Lale by telephone with the help of the detectives. She then met him. After meeting with

her, Lale decided to come to the police station. He agreed to talk to the police without his attorney present. He then confessed to the shooting.

Thereafter, Lale moved to suppress the confession on the grounds that it violated his fifth amendment and sixth amendment rights. The trial court held that there was no violation of the fifth amendment because the confession was taken in a noncustodial setting. The fifth amendment is not at issue here. However, the trial court suppressed the confession on sixth amendment grounds. It reasoned that when Lale was arrested and brought before the court for a bail hearing on September 16, the sixth amendment right to counsel attached. The trial court did not address whether Lale waived the sixth amendment right.

## STATEMENT OF THE CASE

Upon the state's appeal, we perceived two issues of immediate concern. First, we observed that formal adversary proceedings had not been commenced concerning the attempted first-degree murder charge, but that a bail hearing had taken place before the trial court. In *Jones v. State,* 63 Wis. 2d 97, 105, 216 N.W.2d 224, 228 (1974), our supreme court specifically held that the sixth amendment right to counsel does not attach until the time that a defendant is formally charged with a crime by warrant or complaint. We queried whether the bright line rule of *Jones* should be followed where a formal courtroom proceeding took place on a charge for which defendant had been arrested but for which there was no formal complaint. We certified this issue to the supreme court.

We also observed that even if the *Jones* rule is ironclad, Lale's sixth amendment rights had attached regarding the illegal gun possession complaints. These rights attached prior to the confession. We questioned whether these rights attach to all related charges for which a criminal complaint had not yet been processed. We noted that this is a question of first impression in Wisconsin, having only recently been discussed by the United States Supreme Court in *Maine v. Moulton,* 106 S. Ct. 477 (1985) and *Moran v. Burbine,* 106 S. Ct. 1135 (1986). We certified this issue as well.

Certification was denied. We then remanded the record to the trial court for a finding of, among other things, waiver, asking the trial court to assume that sixth amendment rights had attached. Upon return, we now decide the issues confronting us.

### *Jones v. State:* The Bright Line Rule Revisited

In *Kirby v. Illinois,* 406 U.S. 682, 688 (1972), the United States Supreme Court held that the right to counsel attaches only at or after the time adversary judicial proceedings have been initiated against the defendant. It can be argued that a formal adversary proceeding took place under the facts here.

Lale was brought before the trial court. The court was informed that Lale had been arrested for attempted first-degree murder and was incarcerated at the time of the hearing. The state informed the court that although the complaint had not been drafted, it was forthcoming. Bail was then set based upon the impending complaint. The trial court concluded that the right to counsel had attached to Lale because even though no complaint had been issued regarding the

485

attempted murder charge, formal adversary proceedings had taken place in this case.

Cases from our supreme court, however, preclude the trial court from determining that sixth amendment rights attached at the bail hearing. When a defendant has been arrested, but has not been charged either by complaint or information, he is not entitled to sixth amendment protection as a matter of constitutional right. *See State v. Taylor,* 60 Wis. 2d 506, 524, 210 N.W.2d 873, 883 (1973). The distinction between formal and unfiled charges and the reason for the bright line rule were made crystal clear in *Jones v. State.* We are not at liberty to depart from these rulings.[1]

### Adoption of *Maine v. Moulton* and *Moran v. Burbine* Rationale

The next consideration is whether a court may hold that sixth amendment rights attach to unfiled charges because other charges have been formally commenced. The trial court appeared to seize upon certain language in the syllabus to *Maine v. Moulton,* 106 S. Ct. at 479, for this very proposition. The trial court recited the following from the *Moulton* syllabus:

> There is no merit to the argument that the incriminating statements obtained by the police

---

[1]Lale argues that the state is "estopped" from denying that the attempted murder conviction had not been formally filed before the confession because the prosecutor promised to file the charge on September 20, before the confession. He cites no authority for this proposition. Arguments unsupported by references to legal authority will not be considered. *State v. Shaffer,* 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980).

should not be suppressed because the police had other, legitimate reasons for listening to respondent's conversations with Colson, namely, to investigate respondent's alleged plan to kill the State's witness and to insure Colson's safety. This same argument was rejected in *Massiah* [*v. United States,* 377 U.S. 201 (1964)], where the Court held that to allow the admission of evidence obtained from the accused in violation of his Sixth Amendment rights whenever the police assert the need to investigate other crimes to justify their surveillance invites abuse by law enforcement personnel in the form of fabricated investigations and risks the evisceration of the Sixth Amendment right.

We conclude, however, that *Maine v. Moulton* does not stand for the proposition that initiation of formal proceedings on one set of criminal charges creates a sixth amendment right to counsel on the other unfiled charges. In fact, the *Moulton* court stated just the opposite when it wrote:

> Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses.

*Maine v. Moulton,* 106 S. Ct. at 490 n. 16.
This holding was followed in *Moran v. Burbine:*

> Indeed, in *Maine v. Moulton,* decided this Term, the Court again confirmed that looking to the initiation of adversary judicial proceedings, far from being mere formalism, is fundamental to the proper application of the Sixth Amendment right to counsel. There, we considered the constitutional implications of a surreptitious investigation that yielded evidence pertaining to two crimes. For one,

the defendant had been indicted; for the other, he had not. Concerning the former, the Court reaffirmed that after the first charging proceeding the government may not deliberately elicit incriminating statements from an accused out of the presence of counsel. See also *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The Court made clear, however, that the evidence concerning the crime for which the defendant had not been indicted—evidence obtained in precisely the same manner from the identical suspect— would be admissible at a trial limited to those charges. *Maine v. Moulton,* — U.S., at — and —, n. 16, 106 S.Ct., at 490 and 490 n. 16. The clear implication of the holding, and one that confirms the teaching of [*United States v.*] *Gouveia* [467 U.S. 180 (1984)], is that the Sixth Amendment right to counsel does not attach until after the initiation of formal charges. Moreover, because Moulton already had legal representation, the decision all but forecloses respondent's argument that the attorney-client relationship itself triggers the Sixth Amendment right.

*Moran,* 106 S. Ct. at 1146. The headnote that the trial court relied upon had to do with the prosecutor's contention in *Moulton* that it was permissible to record conversations between a defendant and co-defendant because the government has a legitimate interest in investigating other crimes unassociated with the crime formally charged. The flaw in the prosecutor's argument, however, was that the recorded conversations were used to confirm the crime with which the defendant had been formally charged. The Supreme Court wrote:

> In seeking evidence pertaining to pending charges, however, the Government's investigative powers

are limited by the Sixth Amendment rights of the accused. To allow the admission of evidence obtained from the accused in violation of his Sixth Amendment rights whenever the police assert an alternative, legitimate reason for their surveillance invites abuse by law enforcement personnel in the form of fabricated investigations and risks the evisceration of the Sixth Amendment right recognized in *Massiah.*

*Maine v. Moulton,* 106 S. Ct. at 489.

We conclude that the language in *Moulton* requiring suppression of evidence refers to situations where police obtain incriminating statements pertaining to the crime for which a defendant has been formally charged, but justify their action by reasoning that they meant to investigate other unfiled charges; where, however, the police obtain incriminating statements on charges unrelated to the filed charge, the *Moulton* and *Moran* courts hold that the sixth amendment rights are not implicated. We adopt the *Moulton/Moran* rationale for Wisconsin.

While we adopt *Moulton* and *Moran,* we ascertain that there may be an exception to the rule. If the government formally files on some charges but delays filing of another charge as a pretext to facilitate investigation of that unfiled charge without being hampered by the sixth amendment, bad faith may exist. We do not adopt the exception at this time because bad faith has not been raised and extended discussion would be dicta.[2] We simply acknowledge the possibility of an exception to the rule.

[2]Lale does indeed argue that police deception took place, but only within the context of inducing Inez Kulick to act as their

## STATE'S AGREEMENT NOT TO TALK TO THE DEFENDANT

Following the bail hearing and one week prior to the formal charge of attempted murder, there was an agreement between the state and Lale's attorney, in the presence of two detectives, that the state would not talk to the defendant. Lale argues that the moment the agreement was made, the state gave Lale a sixth amendment right to counsel by contract, and therefore, the state is now estopped from asserting that the sixth amendment right had not attached.

■ Lale has presented no authority for this novel argument and we have discovered no authority by our independent research. While the fact that the agreement was violated causes us some discontent, we have previously been instructed by our supreme court that prosecutorial misdealings should only rarely affect the criminal proceeding. *See State v. Ruiz,* 118 Wis. 2d 177, 202, 347 N.W.2d 352, 364 (1984). While the deliberate violation of this agreement may offend SCR 21.05, our review of the *Ruiz* factors convinces us that we should not suppress based on this issue.

*By the Court.*—Order reversed and cause remanded.

---

agent in procuring his confession. That particular argument goes to disprove the voluntariness of his waiver of sixth amendment rights. Since we hold that the sixth amendment right did not attach here, Lale's argument regarding police deception is irrelevant. Lale has not claimed that the delay in filing the attempted murder charge was a deceptive tactic on the government's part. The trial court was not asked nor did it enter any findings regarding pretext on the state's part.

NETTESHEIM, J. (*dissenting*). Because I conclude that Glenn S. Lale's right to counsel on the attempted murder charge attached at his initial appearance on September 16, 1985, I respectfully dissent from the majority opinion. In the same breath, I must add that my disagreement lies as much with the supreme court's choice of language in *Jones v. State,* 63 Wis. 2d 97, 216 N.W.2d 224 (1974), as it does with the majority opinion.

The language from *Jones* upon which the majority feels compelled to rest its conclusion that Lale's right to counsel did not attach when the police questioned him on September 20 is the following:

> If the line of demarcation is to be definite, the complaint or the warrant must be issued. Anything prior to that time falls on the wrong side of the line. Consequently, no constitutional right of Jones was violated because of absence of his counsel at the informal confrontation outside the district attorney's office.

*Id.* at 105, 216 N.W.2d at 228.

Earlier decisions of the United States Supreme Court had mandated that counsel be provided to defendants subjected to lineup proceedings. *See United States v. Wade,* 388 U.S. 218 (1967); *Gilbert v. California,* 388 U.S. 263 (1967). Such a proceeding was deemed a "critical stage" of the prosecution. The per se exclusionary rule of these cases was not specifically limited to post-indictment identifications.

Subsequent Wisconsin cases concluded that the critical stage triggering the right to counsel was that point when the proceeding had "moved from a purely investigatory to an accusatorial stage." *See Hayes v. State,* 46 Wis. 2d 93, 97, 175 N.W.2d 625, 627 (1970).

*Kirby v. Illinois,* 406 U.S. 682 (1972), substantially modified the *Wade/Gilbert* rule by limiting the right to counsel under the federal constitution to those lineups conducted after the commencement of an adversary judicial criminal proceeding. Wisconsin followed with *State v. Taylor,* 60 Wis. 2d 506, 210 N.W.2d 873 (1973), which withdrew the *Hayes* language requiring the presence of counsel or an explicit waiver of counsel at a lineup prior to the institution of formal charges. *Taylor* at 523, 210 N.W.2d at 882. *Jones* then followed with its statement that formal charges are equated with the issuance of the warrant or complaint—language which lies at the crux of this appeal.

While I agree with the supreme court's result in *Jones,* the reach of its language was unnecessarily broad. The factual scenarios in *Taylor* and *Jones* were, for all practical and constitutional purposes, similar. In *Taylor,* the defendant had been arrested and was subjected to a lineup; in *Jones,* the defendant had been arrested and was subjected to an interview in the district attorney's office. When, in *Taylor,* the court found it sufficient to state that the right to counsel attached with commencement of formal proceedings, one wonders why, in *Jones,* it was necessary to further narrow that concept to the actual filing of the warrant or complaint.

Here, Lale was arrested on the attempted murder charge on September 15. On September 16, he was produced in the trial court as a result of this arrest and in response to the weapons charges contained in the written complaint then filed. The state advised Lale and the trial court that the attempted murder charge was to be filed and the court was requested to bear this fact in mind in setting bail. The critical

distinguishing factor from *Jones* and *Taylor* is that here the state had invoked the judicial process against Lale and had committed itself on the record to its prosecution of the attempted murder charge against him.[1]

It is commonplace for defendants to be produced in court for purposes of a bail hearing after the district attorney has committed the state to prosecution but before the district attorney's office has been able to generate the written complaint. This is a wise and desirable policy employed by trial courts and district attorneys throughout this state. This policy is commendable because it seeks to admit defendants to bail at the earliest possible moment, while also recognizing that district attorneys' offices are, in many jurisdictions, overworked and understaffed and are not able to generate a complaint immediately upon the heels of an arrest.[2]

But the right to the presence of counsel should not be conditioned upon the convenience of the state and its ability to generate a criminal complaint in a timely fashion. Rather, this right should be measured from the standard fixed by *Taylor*—the commencement of formal proceedings. The later qualifying language of *Jones* failed to anticipate the very situation we have here—the commencement of judicial proceedings on an, as yet, unfiled charge coupled with the unequivo-

---

[1]The fact that some search warrants were still unexecuted and that certain reports had not been filed does not detract from the district attorney's statement that the attempted murder charge would be forthcoming. Crimes are routinely the subject of continuing investigations, even after they are formally charged.

[2]Moreover, this policy minimizes potential problems with sec. 970.01(2), Stats., requiring that a complaint be filed forthwith after a person is arrested without a warrant.

493

cal statement of the district attorney committing the state to prosecution on such a charge. Until the supreme court holds that the right to the presence of counsel does not apply in such a setting, we should not read the *Jones* holding in such an expansive manner.