Charles Victor THOMPSON, Appellant,

v.

The STATE of Texas.

No. 73431.

Court of Criminal Appeals of Texas.

Jan. 29, 2003.

Rehearing Denied April 9, 2003.

Floyd W.Freed, III, Spring, for Appellant.

Alan Curry, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for State.

### OPINION

The opinion is delivered PER CURIAM.

Appellant was convicted of capital murder in April 1999. TEX. PENAL CODE ANN. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure article 37.071 §§ 2(b) and 2(e), the trial court sentenced appellant to death. TEX.CODE CRIM. PROC. art. 37.071 § 2(g). On original submission, the cause was remanded for a new punishment hearing due to error occurring during the punishment phase of the trial. *Thompson v. State*, 93 S.W.3d 16 (Tex. Crim.App. 2001).

We granted appellant's first ground for rehearing in which he maintained we failed to fully consider his fourth point of error on original submission. Upon further consideration, we have concluded our decision to grant rehearing was improvident and we withdraw the order granting rehearing. The cause is remanded to the trial court for a new punishment hearing. TEX. CODE CRIM. PROC. art. 44.29(c).

KEASLER and HERVEY, J.J. concurring and dissenting.

KEASLER, J., delivered this opinion concurring to the denial of Appellant's motion for rehearing and dissenting to the Court's failure to grant rehearing on its own motion. HERVEY, J., joined.

The Court denied Thompson's motion for rehearing. I concur with that decision. But we should grant rehearing on our own motion, overrule *Wesbrook v. State*,[1] and correct the flaws of our previous opinion in this case. I dissent to the Court's failure to do so.

### I.

In Thompson's fourth point of error, he argues that the State's use of undercover officer Gary Johnson to obtain incriminating statements from him violated the Sixth Amendment. On original submission, we agreed. We relied on our own opinion in *Wesbrook*, which involved almost identical facts, and we reasoned that "no developments in the law since *Wesbrook* would change or affect" that holding.[2] We also relied on the leading Supreme Court authority, *Maine v. Moulton*,[3] which had formed the basis of our holding in *Wesbrook* as well. In both opinions we quoted *Moulton*'s now familiar language:

To allow the admission of evidence obtained from the accused in violation of his Sixth Amendment rights whenever the police assert an alternative, legitimate reason for their surveillance invites abuse by law enforcement personnel in

---

1. 29 S.W.3d 103 (Tex.Crim.App.2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001).

2. *Thompson v. State*, 93 S.W.3d 16, 27 (Tex. Crim.App.2001) (op. on orig. subm.).

3. 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

the form of fabricated investigations and risks the evisceration of the Sixth Amendment right recognized in *Massiah*. On the other hand, to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. Consequently, incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel.[4]

But our opinion in *Wesbrook* misinterpreted *Moulton*, and we should therefore re-evaluate our decision in this case.

Initially, it is worth noting that when statements are obtained from a suspect in violation of his right to counsel, the Sixth Amendment violation occurs at the moment that the statements are obtained. If such a violation occurs, the statements are inadmissible at trial—at any trial—of the accused for any offense. Conversely, if the statements are legally obtained, they are admissible, if relevant, at any trial of the accused for any offense.

Of course, if a statement incriminates a defendant with regard to two separate offenses simultaneously, one a charged offense and one an uncharged offense, then that particular statement could be inadmissible at one trial and admissible at the other. But that is not the case here. In this case we are concerned solely with statements about one particular offense— an uncharged offense. In that sense, the analysis of whether the Sixth Amendment was violated in obtaining the statement should govern that statement's admissibility at both the trial of that uncharged offense and the trial of the pending charge.

## II.

I will next consider the leading Supreme Court authority on the issue of statements obtained from defendants before their trial and in the absence of their lawyers. I will also attempt to demystify the critical language in *Maine v. Moulton*.

### A. The Cases

I begin with *Massiah v. United States*.[5] There, the defendant and a co-defendant were charged with possessing narcotics. They each retained a lawyer, pleaded not guilty, and were released on bail pending trial. The co-defendant soon decided to cooperate with authorities in their continuing investigation of the drug transaction. The police hoped to locate the source of the drugs as well as the intended buyer. To assist them, the co-defendant met with the defendant in the co-defendant's car, which had been equipped with a receiving device so that a police officer could overhear the conversation. The defendant made incriminating statements regarding the drug operation during the conversation and those statements were admitted at his trial.

The Supreme Court began by referring to the concurring opinions in *Spano v. New York*.[6] That case had involved the admission into evidence of the defendant's con-

---

4. *Wesbrook*, 29 S.W.3d at 118–19 (internal footnote omitted); *Thompson*, 93 S.W.3d 16, 24.

5. 377 U.S. 201, 84 S.Ct. 1199.

6. 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959).

fession, which had been obtained after he had been indicted but without the aid of his lawyer. The *Massiah* Court looked to the concurring opinions in *Spano,* stating that they "pointed out that under our system of justice the most elemental concepts of due process of law contemplate that an indictment be followed by a trial, in an orderly courtroom, presided over by a judge, open to the public, and protected by all the procedural safeguards of the law." [7] In addition, the *Massiah* Court said, the *Spano* concurrences emphasized that "a Constitution which guarantees a defendant the aid of counsel at such a trial could surely vouchsafe no less to an indicted defendant under interrogation by the police in a completely extrajudicial proceeding. Anything less ... might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." [8]

The *Massiah* Court also referred to *Powell v. Alabama,*[9] which had recognized that defendants "are as much entitled" to the aid of counsel during the time from their arraignment to the beginning of trial "as at the trial itself," because this pretrial period is "perhaps the most critical period of the proceedings ... when consultation, thorough-going investigation and preparation are vitally important." [10]

The Court then applied this law to the facts before it, even though Massiah had been interrogated not by a police officer but by a government informant. The Court explained that the rule would have to extend to facts such as these because "if such a rule is to have any efficacy it must apply to indirect and surreptitious interrogations as well as those conducted in the jailhouse. In this case, Massiah was more seriously imposed upon because he did not even know that he was under interrogation by a government agent." [11]

The Court concluded by recognizing that while the police may naturally continue their investigative efforts into a crime after the defendant has been arrested, "the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against him at his trial." [12]

The next significant case after *Massiah* was *United States v. Henry.*[13] In *Henry,* the defendant was indicted for robbery, had counsel appointed, and was in jail awaiting trial. Coincidentally, housed with him in the jail was a paid government informant incarcerated on forgery charges. Authorities spoke with the informant and asked him to "be alert" to any statements made by the other prisoners, but not to initiate a conversation with Henry or to ask him any questions. Later, the informant told authorities that Henry had told him about the robbery, and the informant was paid for his information. The informant then testified at Henry's trial regard-

7. *Massiah,* 377 U.S. at 204, 84 S.Ct. 1199 *quoting Spano,* 360 U.S. at 327, 79 S.Ct. 1202 (Stewart, J., concurring).

8. *Id., quoting Spano,* 360 U.S. at 326, 79 S.Ct. 1202 (Douglas, J., concurring).

9. 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

10. *Massiah,* 377 U.S. at 205, 84 S.Ct. 1199 (internal brackets omitted), *quoting Powell,* 287 U.S. at 57, 53 S.Ct. 55.

11. *Id.* at 206, 84 S.Ct. 1199 *quoting United States v. Massiah,* 307 F.2d 62, 72–73 (Hays, J., dissenting).

12. *Id.* at 207, 84 S.Ct. 1199.

13. 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

ing the statements Henry had made to him about the robbery.

The Court began with the language in *Massiah* holding that the defendant's right to counsel had been violated when "federal agents had deliberately elicited" from him incriminating statements.[14] The questions in *Henry* were whether the jailhouse informant was a "government agent" and whether he had "deliberately elicited" statements from the defendant. The Court answered both questions affirmatively.[15] The Court acknowledged the government's argument that the informant had been instructed not to question Henry. But the Court concluded that, despite this instruction, the government agent "must have known" that Henry would likely incriminate himself to the informant.[16] Additionally, the Court noted that the informant had been more than just a passive listener—he had actually engaged in conversation with Henry.[17]

The *Henry* Court emphasized that the defendant had not known that he was speaking to someone who would convey his words to the prosecution. It recognized that "[a]n accused speaking to a known Government agent is typically aware that his statements may be used against him," whereas "the same cannot be said" with regard to an accused who is "in the company of a fellow inmate who is acting by prearrangement as a Government agent."[18] It stated that "[c]onversation stimulated in such circumstances may elicit information that an accused would not intentionally reveal to persons known to be

Government agents."[19] The Court concluded by holding that the government "intentionally creat[ed] a situation likely to induce Henry to make incriminating statements without the assistance of counsel," thereby violating Henry's right to counsel.[20]

A few years later came *Moulton*. In that case, the defendant was out on bail awaiting trial when he met with his co-defendant and suggested murdering one of the State's witnesses. The co-defendant decided to cooperate with the police. He recorded a conversation that he had with the defendant in which he indirectly elicited a number of incriminating statements from the defendant. The bulk of the comments involved the offense for which trial was pending; the defendant dropped the witness-murder idea as not being feasible. At the defendant's trial, the incriminating statements related to the offense were admitted, but not any of the statements related to the murder plot.

The Supreme Court began with the acknowledgment that the right to counsel does not exist solely at trial—it applies before trial as well, when the adversary criminal proceedings have begun.[21] The Court then noted that once the right to counsel has attached and been asserted, the State must honor it, meaning, "at the very least," that "the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel."[22] The Court then reviewed *Spano*, *Massiah*, and *Henry*, emphasizing

---

14. *Id.* at 270, 100 S.Ct. 2183.

15. *Id.* at 270–71, 100 S.Ct. 2183.

16. *Id.* at 271, 100 S.Ct. 2183.

17. *Id.*

18. *Id.* at 273, 100 S.Ct. 2183.

19. *Id.*

20. *Id.* at 274, 100 S.Ct. 2183.

21. *Moulton,* 474 U.S. at 170, 106 S.Ct. 477.

22. *Id.* at 170–71, 106 S.Ct. 477.

that "the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent."[23]

In attempting to distinguish the previous cases, the government argued that the State was validly investigating a potential murder in *Moulton*.[24] Since that investigation was legitimate, the government contended, the statements Moulton made during that investigation which concerned the charged offense should have been admissible at the trial of that offense.[25] But the Court disagreed. It recognized that the police have "an interest in investigating new or additional crimes."[26] But it concluded that, "[i]n seeking evidence pertaining to pending charges, ... the Government's investigative powers are limited by the Sixth Amendment rights of the accused."[27] The Court then set forth the critical language which formed the basis of its holding:

> [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. Consequently, incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, not

withstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel.[28]

That same term the Court decided *Moran v. Burbine*.[29] In that case, the defendant was arrested for burglary. While he was in custody and without his knowledge, his sister attempted to retain the services of the Public Defender's Officer for him. A lawyer from that office called the station and was told that officers would not question the defendant until the following day. Nevertheless, when officers received information implicating the defendant in a murder, they approached him. After waiving his *Miranda*[30] rights, he confessed to the murder. His confession was admitted at his murder trial.

After rejecting the defendant's Fifth Amendment arguments, the Supreme Court analyzed the facts under the Sixth Amendment.[31] The Court began with the fundamental notion that the accused is entitled to counsel, but not until the right to counsel attaches.[32] The Court concluded that the interrogation of Burbine took place before his right to counsel had attached with regard to the murder, so Burbine's right to counsel was not violated.[33]

Burbine argued that, regardless of the fact that adversary judicial proceedings had not yet begun, his right to counsel had attached simply because a lawyer had been

---

**23.** *Id.* at 171–76, 106 S.Ct. 477.

**24.** *Id.* at 178, 106 S.Ct. 477.

**25.** *Id.*

**26.** *Id.* at 179, 106 S.Ct. 477.

**27.** *Id.* at 179–80, 106 S.Ct. 477.

**28.** *Id.* at 180, 106 S.Ct. 477.

**29.** 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

**30.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**31.** *Burbine*, 475 U.S. at 428, 106 S.Ct. 1135.

**32.** *Id.*

**33.** *Id.*

obtained for him. In rejecting this contention, the Supreme Court elaborated on "the underlying purposes of the right to counsel."[34] It explained that "[t]he Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor. Its purpose, rather, is to assure that in any criminal prosecution, the accused shall not be left to his own devices in facing the prosecutorial forces of organized society."[35]

Finally, there is *McNeil v. Wisconsin.*[36] There, the defendant was in custody awaiting trial for armed robbery. Counsel had been appointed for that offense. On several occasions, officers approached the defendant in jail and asked him about an unrelated murder, attempted murder, and burglary. Each time, the officers informed the defendant of his *Miranda* rights and he waived those rights. Eventually, the defendant admitted his involvement in those crimes. He was charged with and later convicted of those offenses, with his incriminating statements being admitted against him.

The defendant argued that his Sixth Amendment right to counsel attached when counsel was appointed in the armed robbery case, so the subsequent questioning of him violated that right. The Supreme Court disagreed. The Court held that the Sixth Amendment right is "offense specific. It cannot be invoked once for all future prosecutions."[37] The Court, quoting from *Moulton,* acknowledged the State's interest in investigating new and additional crimes.[38] The Court concluded that the defendant's statements pertained to offenses for which his right to counsel had not yet attached and, therefore, the Sixth Amendment had not been violated in obtaining them.[39]

Several overriding principles emerge from these cases. First, the attachment of the right to counsel is paramount. If the right to counsel has not yet attached through the initiation of adversary judicial proceedings, then interrogating the defendant, either through obvious police questioning or surreptitious informant questioning, does not violate the Sixth Amendment. A second important principle is that the right to counsel is "offense specific." Though the Court did not use that particular phrase until *McNeil,* the concept existed as far back as *Moulton.* Because it is offense specific, the fact that the right to counsel has attached with regard to one offense does not mean that it has attached with regard to another offense. Instead, each offense must be evaluated individually. The Supreme Court pointedly reminded us of this principle recently in *Texas v. Cobb.*[40] I got it the first time. They don't have to tell me twice more.

Finally, the right to counsel is not a "protective cloak" which prevents the police from continuing to investigate the defendant in other crimes. The purpose of the Sixth Amendment, like its application, is "offense specific." The Sixth Amendment exists to protect the defendant, in

---

**34.** *Id.* at 430, 106 S.Ct. 1135.

**35.** *Id.* (internal citations and quotation marks omitted).

**36.** 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

**37.** *Id.* at 175, 111 S.Ct. 2204.

**38.** *Id.* at 175–76, 111 S.Ct. 2204.

**39.** *See id.* at 176, 111 S.Ct. 2204.

**40.** 532 U.S. 162, 174, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001).

the prosecution of a particular offense, from the "prosecutorial forces of organized society, so that he is not left alone."[41] It is not intended to shield the defendant from being interrogated about new and additional crimes.

Of course, each of the preceding cases differs factually from ours today in a significant respect. In each of the above cases, the State sought to admit at the defendant's trial evidence of the defendant's guilt of that offense. In this case, however, the State sought to admit at the punishment phase of Thompson's trial evidence of Thompson's committing an entirely different offense. The task is to apply the Supreme Court authority to these unique facts.

## B.   Analysis of Moulton

### 1.   What it Says and Doesn't Say

I now analyze the critical language from *Moulton* one phrase at a time. The first sentence of the oft-quoted excerpt states that "to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." This sentence has three important elements. First, it tells us that, in analyzing whether the defendant's right to counsel has attached, we consider "evidence pertaining to [those] charges." In other words, the content of the statement is relevant. We should consider, in our analysis, what charges the statement addresses. If the statement pertains to charges where the right to counsel has not yet attached, then the statement has been obtained legally and should be admitted. On the other hand, if

the statement pertains to charges as to which the right to counsel had attached when the statements were made, then the statement may have been obtained illegally and may need to be excluded.

Second, this sentence reminds us that the critical time period in terms of analyzing a Sixth Amendment violation is "the time the evidence was obtained." Finally, the above sentence recognizes that the public has an interest in the investigation of criminal activities, and this interest may be pursued even when a defendant has pending charges where his right to counsel has attached. The sentence leaves no doubt that the mere attachment of the right to counsel with regard to pending charges does not prevent the police from investigating the defendant's involvement in other uncharged crimes.

In the next sentence, the Court states the following: "Consequently, incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel." This sentence, too, is multi-dimensional. It says that if the police obtain incriminating statements from the defendant in violation of his right to counsel, those statements are not admissible at the trial of those particular charges. Once again, the Court confirms that the Sixth Amendment violation, if any, occurs at the time the statements are obtained. Additionally, the Court makes clear that statements obtained in violation of the Sixth Amendment which incriminate the defendant on a particular charge are inadmissible at the trial of that charge.

---

**41.** *Burbine*, 475 U.S. at 430, 106 S.Ct. 1135.

Let me point out what this sentence does not say. It does not say that incriminating statements by the defendant pertaining to a new and different offense are inadmissible at the trial of the charged offense. Instead, it says only that incriminating statements by the defendant pertaining to the charged offense are inadmissible at the trial of the charged offense. I will address this point in detail in Subsection 3.

So *Moulton* says that the police may investigate a new crime when a pending charge exists. During this investigation, if they obtain evidence pertaining to the new crime, the acquisition of this evidence does not violate the Sixth Amendment because the Sixth Amendment right to counsel had not yet attached with regard to that crime. This holding makes sense in light of the principles to be gathered from the *Massiah* line of cases.

- The right to counsel cannot be violated until it has attached.

- Just because it has attached with regard to one offense does not mean it has attached with regard to another offense.

- The purpose of the right to counsel is not to shield a defendant from further investigation and prosecution by the State on new and different offenses.

When a defendant is in custody awaiting trial on a charged offense, his Sixth Amendment right to counsel has attached with regard to that offense. When police simultaneously investigate that defendant for a new, uncharged crime, the defendant's Sixth Amendment right to counsel with regard to that uncharged crime has not yet attached. So if the police, either uniformed, undercover, or through an informant, obtain incriminating statements from the defendant with regard to that new, uncharged offense, no Sixth Amendment violation has occurred.

It does not matter at which trial the statements are admitted. What matters is the content of the statement. If the statement incriminates the defendant on the charged offense, obtaining the statement violated the defendant's right to counsel, because his right to counsel had attached with regard to that offense. Likewise, if the statement pertains to an uncharged offense, obtaining the statement did not violate the defendant's right to counsel because his right to counsel had not yet attached with regard to that offense.

It defies common sense to hold that statements by a defendant are admissible at one trial (the trial of the new, uncharged offense), but inadmissible at another trial (the trial of the pending charge). Either a Sixth Amendment violation has occurred in obtaining the statements, or it has not. And once that question is resolved, the statements are either admissible at all trials or inadmissible at all trials. The Supreme Court made clear in *Moulton* that statements pertaining to a new, uncharged offense would be admissible at a trial for that offense. The statements would therefore necessarily also be admissible at a trial for the charged offense.

### 2. Virginia's and Wisconsin's Analyses

The Supreme Court of Virginia recognized this in a case almost identical to this one, *Frye v. Commonwealth.*[42] In *Frye,* the defendant was in custody awaiting trial on capital murder charges when he approached a fellow inmate about an escape plan. The inmate informed authorities, and an investigator asked the inmate to let him know if Frye supplied any more information.

---

**42.** 231 Va. 370, 345 S.E.2d 267 (Va.1986).

The Commonwealth argued that the inmate-informant's actions had not violated the Sixth Amendment because Frye had initiated the relationship, not the informant. The Virginia Court rejected this notion, relying on *Moulton* and *Henry*.[43] But the Court also recognized that *Moulton* was not directly on point. The *Frye* Court emphasized that the Supreme Court limited *Moulton*'s holding "in one crucial respect. The proscription against knowing circumvention of the right of the accused to have counsel present ... extends only to *pending charges* concerning which the right of counsel has attached.... Thus, only such statements as incriminate the defendant on the pending charges are obtained in violation of the Sixth Amendment and must be excluded."[44] The Court concluded that the evidence of the escape plan was admissible at the punishment phase of Frye's capital murder trial because it was "unrelated to the offense for which he was on trial."[45]

Another useful case comes from the court of appeals in Wisconsin. In *State v. Lale*,[46] the defendant was out on bail after being arrested for attempted murder. Although he had retained counsel for that charge, no complaint had been filed and so no formal adversary proceedings had begun. Several days later, a complaint was filed against him for possession of illegal weapons. That same day, officers contacted Lale's girlfriend and persuaded her to encourage Lale to talk to the police about the attempted murder.

The defendant complained that these conversations violated his Sixth Amendment right to counsel, but the court concluded that his right to counsel had not yet attached on the attempted murder. The court explained:

> We conclude that the language in *Moulton* requiring suppression of evidence refers to situations where police obtain incriminating statements pertaining to the crime for which a defendant has been formally charged, but justify their action by reasoning that they meant to investigate other unfiled charges; where, however, the police obtain incriminating statements on charges unrelated to the filed charge, the *Moulton* and *Moran* courts hold that the sixth amendment rights are not implicated.[47]

Admittedly, *Lale* is different from this case because in *Lale*, the defendant made incriminating statements about an uncharged offense and those statements were admitted at the trial for that offense. This makes *Lale* more similar to the Supreme Court precedent in the preceding section rather than to the unique facts of this case.

Nevertheless, the language in *Lale* provides guidance. The court recognized that *Moulton* "refers to situations where police obtain incriminating statements pertaining to the crime for which a defendant has been formally charged, but justify their action by reasoning that they meant to investigate other unfiled charges."[48] This case does not involve such facts, because here, the statements at issue pertain to a new, uncharged offense, not the pending charge. Additionally, the *Lale* court acknowledged that when "the police obtain incriminating statements on charges unrelated to the filed charge, the *Moulton* and

---

43. *Id.* at 391, 345 S.E.2d at 282.

44. *Id.* at 391–92, 345 S.E.2d at 282–83 (emphasis in original).

45. *Id.* at 392, 345 S.E.2d at 282–83.

46. 141 Wis.2d 480, 415 N.W.2d 847 (Wis.Ct. App.1987).

47. *Id.* at 489, 415 N.W.2d at 851.

48. *Id.*

*Moran* courts hold that the sixth amendment rights are not implicated."[49] So both Virginia and Wisconsin agree that statements pertaining to a new, uncharged offense are obtained legally and are therefore admissible at a trial of the charged offense.

### 3. Denying the Antecedent

The *Moulton* Court was clear in stating that evidence obtained regarding the uncharged crime would be admissible at a trial of those charges. And in a footnote, the Court added that "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses."[50] Some courts have concluded from this language that *Moulton* also held that the converse is true—that is, if the statements regarding that uncharged crime are admissible at the trial of that offense, then they must be inadmissible at any other trial, specifically the trial of the charged offense.[51] But the Supreme Court did not say this, and drawing that conclusion from the Court's holding employs the logical fallacy known as denying the antecedent.

Douglas Lind describes this fallacy in his book *Logic and Legal Reasoning.*[52] He uses the following example:

(1) If Socrates is human, then Socrates is mortal.

(2) Socrates is not human.

(3) Therefore, Socrates is not mortal.[53]

Lind explains that this is a logical fallacy because "Socrates could well be mortal, even if not human."[54]

The same is true here. The courts that employ this fallacy reason as follows:

(1) If the trial concerns the uncharged offense, then the evidence is admissible. (*Moulton*'s holding).

(2) This trial did not concern the uncharged offense.

(3) Therefore, the evidence is not admissible.[55]

But the evidence could well be admissible, even though the trial concerned the pending charge rather than the uncharged offense.

The courts employing this fallacy have sometimes relied on the Supreme Court's *dicta* in *Burbine* as support. In addition to other language, the *Burbine* Court also set forth in *dicta* its interpretation of *Moulton* as holding that "the evidence concerning the crime for which the defendant had not been indicted ... would be admissible at a trial limited to those charges."[56] Some courts tend to view the word "limited" as implying that the statement would be admissible only at a trial on that particular charge. But the *Burbine* Court was not faced with facts like this case where the State sought to admit the statement at the punishment phase of the trial of the pending charge.

Moreover, this one sentence in *Burbine* should not be taken so far in light of the *Burbine* Court's stated awareness that (1)

49. *Id.*

50. 474 U.S. at 180 n. 16, 106 S.Ct. 477.

51. *See, e.g., Jackson v. State,* 643 A.2d 1360, 1372 (Del.1994); *Bruno v. State,* 93 Md.App. 501, 509–10, 613 A.2d 440, 444–45 (Md.Ct. Spec.App.1992).

52. DOUGLAS LIND, LOGIC AND LEGAL REASONING 207–08 (2001).

53. *Id.*

54. *Id.* at 208.

55. *Jackson,* 643 A.2d at 1372 (Del.1994); *Bruno,* 93 Md.App. at 509–10, 613 A.2d at 444–45.

56. *Burbine,* 475 U.S. at 431, 106 S.Ct. 1135

Sixth Amendment violations are to be evaluated at the time that the evidence is obtained rather than at the time that it is admitted at trial,[57] and (2) the Sixth Amendment does not wrap "a protective cloak around the attorney-client relationship." Under *Burbine*, the statements in this case would be admissible at the trial of the pending charge because, first, no Sixth Amendment violation occurred in obtaining the statements since the right to counsel had not yet attached with regard to the new, uncharged crime. The statements would also be admissible because the Sixth Amendment should not be used to protect a person from being prosecuted for new, uncharged offenses that he commits. *Burbine* did not address whether the statements would be admissible at the trial for the pending charge. And a careful reading of *Burbine* indicates that the opposite conclusion is more true to the Court's rationale, which emphasized the public's interest in investigating crime.

### 4. Offense Specificity

Objectors may contend that the statements elicited from the defendant regarding the uncharged offense are incriminating not only with respect to that uncharged offense but also with respect to the pending charge. That is, the argument goes, the evidence will "incriminate" the defendant at the punishment stage of the pending charge and likely affect the jury's decision on punishment, to the defendant's detriment. As a result, they would argue, this evidence cannot be admissible at the punishment phase of the pending charge because, since it is incriminating, it was obtained in violation of the defendant's right to counsel on the pending charge.

The problem with this argument is that the right to counsel does not protect a defendant from being interrogated with regard to anything which could remotely affect the punishment phase of his trial. Instead, the right to counsel is "offense specific" and protects only against interrogations related to the pending charge. The Sixth Amendment is not a blanket which forbids all communication between the defendant and law enforcement in the absence of the defendant's counsel. Rather, it forbids interrogation of the defendant regarding the pending charge without his lawyer.

### III.

This Court is reluctant to overrule precedent. But when one of our opinions conflicts with Supreme Court authority, we should overrule it. *Wesbrook* misinterpreted and conflicts with *Moulton*.

In *Wesbrook*, the defendant, in custody awaiting trial on capital murder, told a fellow inmate that he wanted to hire someone to kill two people. The inmate told the police, and the police arranged a plan with the inmate. The inmate told the defendant that he knew of a hit man, who was really undercover officer Gary Johnson (the same undercover officer in today's case). The defendant was interested and had five more people he wanted killed, four of whom were to be witnesses at his trial. The defendant spoke to Johnson on the phone to hire him, then later spoke to Johnson in person, but he eventually backed out of the murder plan because he was afraid the police were on to him. The State introduced evidence of the solicitation at the punishment phase of the defendant's capital murder trial.

Our analysis was flawed. First, although we cited *Moulton* generally for the

---

**57.** *Id.* at 428, 106 S.Ct. 1135 (interrogation of Burbine took place before his right to counsel had attached with regard to the murder, so Burbine's right to counsel was not violated).

proposition that "[t]he Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent," [58] we failed to acknowledge that *Moulton* specifically limited this holding to "incriminating statements pertaining to pending charges." In *Wesbrook,* we applied *Moulton's* holding to incriminating statements pertaining to a new offense, solicitation of capital murder. But nothing in *Moulton* supports this extension.

Second, we recognized the rules concerning cellmates as government agents "deliberately eliciting" information from the defendant. We then without elaboration applied this doctrine of law to the facts of the case, concluding that the State "intentionally created a situation likely to induce appellant to make incriminating statements without the assistance of counsel, the State violated appellant's Sixth Amendment right to counsel." [59] The problem with that leap in logic was that we never considered whether Wesbrook's right to counsel had attached with regard to the solicitation offense. If we had done so, we would have been forced to realize that the defendant's right to counsel had not attached with regard to that offense.

We should analyze the issue anew today and recognize that the statements were not obtained in violation of Wesbrook's right to counsel because they pertained to a solicitation offense for which he had not yet been charged. The statements were therefore admissible at the punishment phase of the trial of the pending charge.

We should overrule that portion of *Wesbrook* which dealt with Wesbrook's sixth point of error. I must admit that I joined the plurality that handed down the judgment in *Wesbrook.* Upon reconsideration, I conclude that I was wrong. I therefore join Justice Jackson in admitting that

> [p]recedent ... is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and perhaps misled others.... Perhaps Dr. Johnson really went to the heart of the matter when he explained a blunder in his dictionary—"Ignorance, sir, ignorance." But an escape less self-deprecating was taken by Lord Westbury, who, it is said, rebuffed a barrister's reliance upon an earlier opinion of his Lordship: "I can only say that I am amazed that a man of my intelligence should have been guilty of giving such an opinion." If there are other ways of gracefully and good naturedly surrendering former views to a better considered opinion, I invoke them all. [60]

## IV.

Thompson was under indictment and in custody awaiting trial for capital murder. Obviously, adversary criminal proceedings had been initiated with respect to the capital murder, and Thompson's Sixth Amendment right to counsel had attached with respect to that charge.

While in custody, Thompson made statements concerning an additional offense, a plan to murder a witness at his trial. This was a new offense. No adversary criminal proceedings had been initiated with respect to this offense. Thompson's right to counsel had not attached with respect to this offense. Obtaining these statements from Thompson did not violate the Sixth Amendment because his right to counsel

---

58. *Wesbrook,* 29 S.W.3d at 117.

59. *Id.* at 118.

60. *McGrath v. Kristensen,* 340 U.S. 162, 177–78, 71 S.Ct. 224, 95 L.Ed. 173 (1950) (Jackson, J., concurring).

had not yet attached with respect to this offense. Since obtaining the statements did not violate the Sixth Amendment, the statements were admissible, not only at his trial for that offense, but also at his trial for the pending charge.