

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00108-CR

---

TEDDY DWANE MOODY, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 35041CR

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

After Teddy Dwane[1] Moody was indicted for aggravated perjury, a Hunt County jury convicted him of the lesser-included offense of misdemeanor perjury and sentenced him to 365 days in the Hunt County Jail and assessed a $4,000.00 fine. *See* TEX. PENAL CODE ANN. § 37.02. In one issue on appeal, Moody contends there was legally insufficient evidence to convict him. Because we find that sufficient evidence supported the jury's verdict, we affirm the trial court's judgment.

## I.      Background

In connection with pending misdemeanor charges in another court, Moody executed an affidavit of indigence requesting a court-appointed attorney. His affidavit of indigence had blanks for certain personal identifying information, employment status, monthly income, monthly expenses, assets, and completion of an unsworn declaration "certify[ing that] the above information is true and correct." The form includes the following statement:

> I understand that if I intentionally or knowingly give false information either in this affidavit or during the hearing on this motion, that I may be prosecuted for the offense of aggravated perjury, a third degree felony, punishable by imprisonment not to exceed (10) years or less than [two] years and a fine not to exceed ten thousand dollars ($10,000.00).

Moody completed the form and signed it "under penalty of perjury." In the portion to be completed by the judge, a box is marked indicating Moody met the eligibility requirements, and an attorney was appointed to represent him.

---

[1]There are multiple spellings of Moody's middle name throughout the record. We use the spelling of Moody's middle name ("Dwane") from the trial court's judgment.

Relevant here, Moody indicated on the affidavit of indigence that the value of his home was "$0" and the value of his cars was "$0." The State indicted Moody, alleging that those particular statements, among others, constituted perjury. The State alleged in Moody's indictment that he "possessed an ownership interest in residential property valued in excess of $0" and "owned as his sole and separate property a 2022 Ford F-350 vehicle and one or more 2020 Yamaha YZ250 motorcycles with a total value in excess of $0."

Moody pled not guilty, the matter went to trial, and the jury found Moody guilty of the lesser-included offense of misdemeanor perjury. Moody appeals.

## II. Legally Sufficient Evidence Supports Moody's Conviction

Moody argues that there was insufficient evidence to convict him because the State did not prove beyond a reasonable doubt that his statements were false and the State failed to prove that he acted with the specific intent to deceive.

### A. Standard of Review and Applicable Law

"The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence." *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979)). "We assess legal sufficiency by viewing the evidence in the light most favorable to the verdict and asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bittick v. State*, 707 S.W.3d 366, 368 (Tex. Crim. App. 2024) (citing *Jackson*, 443 U.S. at 319). "We compare the trial evidence to 'the elements of the offense as defined by a hypothetically correct jury charge for the case.'" *Id.* at 369 (quoting *Zuniga v.*

3

*State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018)). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

"This familiar standard [of review] 'recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence.'" *Braughton*, 569 S.W.3d at 608 (quoting *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011)). "On review, this Court determines whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of the evidence." *Id.* (quoting *Adames*, 353 S.W.3d at 860). "We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution." *Id.* "As a reviewing court, we may not reevaluate the weight and credibility of the evidence in the record and thereby substitute our own judgment for that of the factfinder." *Id.* "A reviewing court is thus 'required to defer to the jury's credibility and weight determinations.'" *Id.* (quoting *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.)). "However, juries are not permitted to come to conclusions based on 'mere speculation or factually unsupported inferences or presumptions.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007)).

"In reviewing the sufficiency of the evidence, we should look at '"events occurring before, during and after the commission of the offense and may rely on actions of the defendant

4

which show an understanding and common design to do the prohibited act.""" *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021) (quoting *Hooper*, 214 S.W.3d at 13). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper*, 214 S.W.3d at 13). "Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015). Further, we "consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson*, 443 U.S. at 319).

Here, the jury convicted Moody of the lesser-included offense of misdemeanor perjury. "A person commits [misdemeanor perjury] if, with intent to deceive and with knowledge of the statement's meaning[,] . . . he makes a false unsworn declaration . . . ." TEX. PENAL CODE ANN. § 37.02(a)(2); *see De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### B.   Analysis

Moody first claims that the State failed to meet its burden that his statements as to the zero dollar values of his home and vehicles were actually false.

The evidence at trial established that Moody and his wife were divorced in 2022, and the divorce decree awarded Moody an interest in certain improved real property in Terrell, Texas. Brent South, the chief appraiser for the Hunt County Appraisal District, testified that the property

5

had an appraised value of over $400,000.00, and Moody was listed as the owner. Testimony was also presented that Moody used the same property's address as the mailing address for his company, Stacker Trailers, Inc., in the certificate of formation filed with the Texas Secretary of State. Moody gave the address for this same property as his physical address on his affidavit of indigence and indicated on the affidavit that he owned his home.

Moody asserts that the State was required to prove his ownership in the property beyond a reasonable doubt. Moody asserts that it is undisputed that there is no warranty deed to his home filed in the county property records, and the fact that he paid taxes on the property did not establish that he had an ownership interest in the property. The State responds that "[t]he perjury statute does not require the State to prove marketable title; it requires proof that the statement made was false in fact."

Moody's argument on appeal centers around the State's failure to establish his ownership of the property beyond a reasonable doubt. Yet his entire discussion ignores that on his affidavit, he gave his physical address as the property in question; indicated that the mailing address was the same as his physical address; and indicated that he owned his home and resided there with family. We find that this evidence, combined with South's testimony and Moody's representation that the value of his home was zero dollars, was sufficient to support the jury's determination that Moody made a false statement regarding the value of his home.

Because the jury could determine that only one of the alleged false statements was false to sustain a conviction of perjury, and we have found that the evidence was sufficient to

determine that Moody made a false statement regarding the value of his home, we need not address Moody's argument about the false statement regarding the value of his vehicles.

Moody next asserts that there was insufficient evidence to convict him because the State failed to prove that he acted with the specific intent to deceive. Among other things, Moody claims that the face of the document itself establishes that he was confused because some of his answers were conflicting.

As is the case with aggravated perjury, "intent to deceive may be inferred from the circumstances." *Teague v. State*, 268 S.W.3d 664, 671 (Tex. App.—Fort Worth 2008, pet. ref'd.) (inferring intent to deceive from the circumstances in a case of aggravated perjury). Here, Moody, like any other defendant seeking a court-appointed attorney, completed an affidavit of indigence for the purpose of requesting a court-appointed attorney to represent him during his criminal proceeding. The jury was free to infer that Moody was motivated to minimize his income and assets so that he would be more likely to meet the eligibility requirement of indigence and thus have a county-funded attorney appointed for him rather than having to expend his own funds to hire an attorney.[2]

Moody cites no authority to support his argument that misunderstanding or confusion excused him from completing the affidavit in a truthful manner. Likewise, Moody cites no authority for his argument that, because the trial court did not request clarification on any of the information he supplied on the affidavit, he must not have committed deception. Further, Moody

---

[2]Although the argument regarding Moody's alleged perjury as to the value of his cars was not analyzed here, the jury also heard evidence from both the State and Moody on the State's allegations that Moody had also committed perjury as to the value of his Ford F-350 truck and motorcycles by representing that his "[v]alue of car(s)" was also "$0."

7

cites *De La Paz* and *Springer v. State* for the proposition that those cases allow evidence of extraneous offenses to prove intent, and, using "the same logic," since the State did not introduce evidence of extraneous offenses, it did not prove intent to deceive or knowledge of falsity. *See De La Paz*, 279 S.W.3d at 347 n.46; *Springer v. State*, 721 S.W.2d 510, 512–13 (Tex. App.— Houston [14th Dist.] 1986, pet. ref'd). *De La Paz* and *Springer* do not stand for this logical fallacy and thus do not support Moody's argument.[3]

We overrule Moody's sole issue.

## III. Conclusion

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: January 28, 2026
Date Decided: May 29, 2026

Do Not Publish

---

[3]A lack of evidence of extraneous offenses does not translate to a lack of deception. Indeed, a person could conceivably commit perjury even though they had never committed any other offense before. *See Thompson v. State*, 108 S.W.3d 269, 278–79 (Tex. Crim. App. 2003) (per curiam) (Keasler, J., concurring in part) (discussing the logical fallacy of "denying the antecedent").