COURT OF APPEALS
DECISION
DATED AND FILED

January 7, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1595-CR**

Cir. Ct. No. **2017CF5792**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

ANDRE DAVID NASH,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: PEDRO COLON, Judge. *Reversed and cause remanded with directions*.

Before Brash, P.J., Dugan and Donald, JJ.

¶1 BRASH, P.J. The State appeals an order of the trial court granting Andre David Nash's motion to suppress identification evidence obtained in a lineup. The State argues that it was Nash's burden to prove that the lineup was impermissibly suggestive, but that the trial court improperly shifted that burden to

the State and effectively required that it prove the lineup was *not* impermissibly suggestive. Furthermore, the State contends that the trial court failed to address the reliability of the lineup, which is required upon finding that a lineup is impermissibly suggestive.

¶2 We agree that the trial court did not properly apply the relevant case law with regard to determining whether a lineup is impermissibly suggestive. Furthermore, we conclude that Nash did not meet his burden of proving impermissible suggestiveness. Therefore, we reverse the order of the trial court and remand this matter with instructions to deny Nash's suppression motion and continue the proceedings.

## BACKGROUND

¶3 Nash was charged with two counts of armed robbery in December 2017. Over the span of a few days—December 5 and December 7—Nash had entered two different Family Dollar stores, each time stealing a bottle of laundry detergent and a comforter. On both occasions, store employees attempted to stop Nash, who then pulled out a black revolver. A fingerprint lifted from the door at one of the stores was identified as belonging to Nash.

¶4 While investigating these incidents, police discovered an address on North 34th Street that was associated with Nash. An officer spoke with D.L.C., who lived at that residence; Nash was her nephew. The officer showed D.L.C. surveillance photos from one of the robberies, and she identified the suspect in the photos as Nash.

¶5 Police took Nash into custody at Mitchell International Airport on December 16, 2017, after removing him from a plane. He was arrested on a

temporary felony want; no warrant had been issued at that point. On December 18, 2017, a lineup was conducted that included Nash and "fillers" from the Milwaukee County Jail. An employee from one of the Family Dollar stores viewed the lineup and identified Nash as the perpetrator. The employee stated that he recognized Nash's face as well as his posture and mannerisms. Charges were then filed against Nash on December 19, 2017.

¶6     Nash filed a motion to suppress the identification evidence, arguing that he was denied his right to an attorney during the lineup. He also asserted that the lineup was impermissibly suggestive because the orange jail top that he was wearing was faded while the fillers' tops were bright orange, and because he had the lightest skin complexion "by far" of all the individuals in the lineup.

¶7     A hearing on Nash's motion was held in February 2018. At the start of the hearing, the trial court asked the State to call its first witness. The State explained that pursuant to the relevant case law, Nash had the burden to show that the lineup was impermissibly suggestive; if Nash established impermissible suggestiveness in the lineup, the burden would then shift to the State to prove that the lineup was nevertheless reliable. *See Powell v. State*, 86 Wis. 2d 51, 65-66, 271 N.W.2d 610 (1978). However, the court continued to ask for evidence from "[e]ither party," stating that otherwise "we can just close the evidence now." The State then asked if the court was ruling that it was an impermissibly suggestive lineup, reiterating that it was Nash's burden to prove.

¶8     The trial court did not respond to that question. Instead, the court turned to Nash's other argument regarding his right to an attorney during the lineup. On that issue, the State asserted that at the time of the lineup, Nash had not yet been formally charged so his right to counsel did not apply. Thus, the State

suggested that this issue was a question of law. Nash's trial counsel provided no evidence to refute the timing of the lineup as compared to when the charges were filed against Nash, nor did he provide any legal arguments to counter the State's position.

¶9 The trial court then again asked the parties whether they were going to present evidence with regard to either issue, or resolve them with a stipulation to the facts. Nash's trial counsel stated he would "gladly" stipulate to the facts contained in his motion; the State did not agree. The court then stated that the issue was "how do we get it into evidence so we know what happened?" At that point, the State said it would call the detective who ran the lineup as a witness.

¶10 The detective then testified. He stated that in choosing fillers from the jail, he considered age, race, sex, height, and weight. Additionally, the detective stated that he had made an effort to ensure that they were all dressed as similarly as possible, and had them all wear knit hats to conceal their "significantly" different hairstyles. A photo of the lineup was also admitted into evidence.

¶11 The detective testified that Nash had requested an attorney just prior to the lineup, but he had informed Nash that he was not entitled to one at that point. The detective noted that lineups are generally recorded with both video and audio for an attorney to subsequently review; however, in this case, there was no video made of the lineup presentation, although there was a recording made of the witnesses filling out the forms while viewing the lineup.

¶12 At a subsequent hearing in March 2018, the trial court granted Nash's motion to suppress. With regard to Nash's claim relating to the difference in his appearance as compared to the fillers—that his complexion was lighter and

4

that his shirt was faded—the court stated that it was unable to "ascertain" from the group photograph of the lineup "to what degree" those differences existed. Nevertheless, the court opined that it was indicative that the lineup was "unduly suggestive[.]" Primarily, however, the court focused on the fact that a lineup had been conducted rather than a photo array. The court stated that the policy of the Milwaukee Police Department is to conduct a photo array, and asserted that there is "a state statute that indicates that's the preferred system so that it's fair."

¶13 The trial court further noted that although Nash's request for an attorney during the lineup did not "have to be honored," it did "inform" the constitutionality of the lineup. Thus, based on the totality of these circumstances, the court granted Nash's motion.

¶14 The State filed a motion for reconsideration, asserting that the trial court had relied on "misinterpreted facts" and had misapplied the law in failing to recognize controlling precedent regarding identification suppression. The State further argued that the court's statement regarding its inability to ascertain similarities and differences based on the photograph of the lineup indicated that Nash did not meet his burden of proving impermissible suggestiveness. Moreover, the State noted that after the court made its determination, it did not make any findings as to whether the lineup was nevertheless reliable, as required by *Powell*.

¶15 Additionally, the State contended that the trial court's focus on procedure—that is, the use of a lineup rather than a photo array—was in error, because there is no "[p]er se rule" that a photo array must be used instead of a lineup. Furthermore, the State asserted that the lack of an attorney is not a consideration relating to impermissible suggestiveness.

¶16    The trial court denied the State's motion for reconsideration.  This appeal follows.

## DISCUSSION

¶17    A defendant's due process rights are violated if identification evidence is admitted that stems from a police procedure that is "impermissibly suggestive."  *State v. Benton*, 2001 WI App 81, ¶5, 243 Wis. 2d 54, 625 N.W.2d 923 (citations omitted).  A challenge of identification evidence consists of two prongs.   First, the defendant must show that the procedure used in the identification was impermissibly suggestive.  *Powell*, 86 Wis. 2d at 65.  This burden is met if it is shown that the procedure used would "give rise to a very substantial likelihood of irreparable misidentification."  *Id.* at 64 (citation omitted).  If the defendant successfully establishes impermissible suggestiveness, the burden then shifts to the State to establish the second prong:  that "the identification was nonetheless reliable under the totality of the circumstances." *Id.* at 66.

¶18    The findings of fact made by the trial court in making this determination "may not be disturbed unless they are 'clearly erroneous.'"  *Benton*, 243 Wis. 2d 54, ¶5 (citation omitted).  However, the application of constitutional principles to those findings of fact is reviewed *de novo*.  *State v. Eason*, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.

¶19    The record shows that the trial court did not adhere to the procedure set forth in *Powell*.  At the start of the motion hearing, the court began by asking whether the State wanted to call its first witness.  After the State pointed out that Nash carried the burden for the first prong of the *Powell* test, Nash's trial counsel merely deferred to his motion as filed.

¶20    The trial court then stated that if neither party had evidence to present, it would "close the evidence now." The State asked for clarification as to whether the court was ruling that the lineup was impermissibly suggestive. However, the court did not make that finding; instead, it asked about the other issue raised by Nash—whether he had invoked his right to counsel for the lineup. After the parties argued that issue, the trial court again asked whether *either party* had evidence to present, at which time the State called the detective to testify.

¶21    Prior to the State calling its witness, Nash had not presented any evidence to demonstrate that the lineup was impermissibly suggestive; in other words, Nash had not met his burden of proof in accordance with the first prong of the ***Powell*** test. *See id.*, 86 Wis. 2d at 65. Furthermore, at that point the trial court had not made a finding that the lineup was impermissibly suggestive. Therefore, the burden of proof should not have shifted to the State; instead, Nash's motion should have simply been denied based on his failure to meet his burden of proof. *See **id.*** at 66.

¶22    Nevertheless, even after recognizing—and pointing out—this erroneous application of the ***Powell*** test, the State presented evidence on the issue. After considering the State's evidence, the trial court made a determination that there were "several things that [it] think[s] are unduly suggestive[.]" Yet, other than briefly discussing its difficulty in ascertaining from the photograph differences between Nash and the other men in the lineup, the court made no findings that the lineup procedure had "give[n] rise to a very substantial likelihood of irreparable misidentification" to establish that the burden of showing impermissible suggestiveness had been met. *See **id.*** at 64 (citation omitted).

¶23     Instead, the trial court focused on the fact that police had used a lineup rather than a photo array, asserting that there is a state statute which indicates that a photo array is the "preferred system[.]"  However, the court did not cite to any statute to support this statement, and we were unable to locate one; the statute relating to eyewitness identification procedures, WIS. STAT. § 175.50(2) (2017-18),[1] mandates only that law enforcement agencies "adopt written policies for using an eyewitness to identify a suspect upon viewing the suspect in person or upon viewing a representation of the suspect."  There is no preference set forth in the statute for either method.  *See id.*

¶24     In fact, the ***Powell*** court took note of a United States Supreme Court case in which the Court had declared that "in a certain sense, particularly in light of the inherent limitation of photographs, 'the dangers of misidentification are even greater at a photographic display than at a lineup.'"  *See **Powell***, 86 Wis. 2d at 63 (citation omitted).  Indeed, the detective in this case testified that when, as in this situation, a suspect is available for a lineup, there are benefits to conducting a lineup instead of a photo array:  the victim or witness can actually see the suspect through the one-way mirror and observe movements and mannerisms.

¶25     The trial court also relied on Nash's request for an attorney to be present during the lineup in its analysis.  However, at the time of the lineup, Nash had not yet been charged in this matter, and there had been no warrant issued at the time Nash was arrested at the airport.  "[A]n accused ha[s] no right to counsel at a lineup conducted prior to the commencement against the accused of an

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

adversary, judicial, criminal proceeding." ***Jones v. State***, 63 Wis. 2d 97, 104, 216 N.W.2d 224 (1974).

¶26     Although the trial court acknowledged that Nash's request for counsel did not have to be "honored," the court stated that it nevertheless "inform[ed]" the constitutionality of the lineup.  It is not clear what the court meant by this statement.  However, regardless of the court's intended point, the law unequivocally states that under these circumstances, Nash had no right to counsel.  *See **id.***  Therefore, we agree with the State that this was not a relevant factor in the analysis of whether the lineup was impermissibly suggestive.  *See **Powell***, 86 Wis. 2d at 64.

¶27     In short, the trial court's statement that there were "several things" about the lineup that it thought were "unduly suggestive" was based on irrelevant and erroneous applications of the law.  Thus, it was never established that the lineup was impermissibly suggestive, as required by the first prong of the ***Powell*** test.  *See **id.*** at 65.

¶28     Furthermore, even if the trial court's "unduly suggestive" comment could be construed as a proper determination of impermissible suggestiveness, the court then failed to engage in an analysis of the lineup's reliability—the second prong of the ***Powell*** test.  *See **id.*** at 66.  In such an analysis, the factors to be considered

> include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). Consideration of these factors assist in determining the answer to the "central question" of whether "under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 199 (internal quotes omitted).

¶29   The trial court considered none of those factors. Instead, in its response to the State's argument on this issue during the hearing on its motion for reconsideration, the court again relied on the fact that a photo array had not been conducted; we have already pointed out that a photo array is not required by law. The court further stated that there was "no way to test the reliability" of the lineup because there was no video recording. However, videotaping a lineup is likewise not required by statute or case law, *see* WIS. STAT. § 175.50, and the court failed to provide any other basis for this finding.

¶30   In sum, the trial court failed to consider appropriate factors and properly apply the law in granting Nash's motion to suppress. We conclude after reviewing the record and the relevant law that Nash did not meet his burden of proof that the lineup was impermissibly suggestive. *See Powell*, 86 Wis. 2d at 65. Therefore, his suppression motion should have been denied. Accordingly, we reverse the order of the trial court suppressing the identification evidence, and remand this matter with instructions to enter an order denying Nash's motion to suppress, and to continue proceedings in this matter as appropriate.

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.

10